**Reginald Lee**                      **Deponent: REGINALD LEWIS LEE**
**v. Officer Dante Hemingway, et al.**           **January 13, 2003**

Page 1

```
 1   IN THE UNITED STATES DISTRICT COURT

 2    FOR THE DISTRICT OF MARYLAND

 3   REGINALD LEE,

 4            Plaintiff

 5   vs.                              Civil Action No.:

 6   OFFICER DANTE HEMINGWAY,         S-02-2843

 7   et al.,

 8            Defendants

 9            ----------------------
```

10     Deposition of REGINALD LEWIS LEE, called for

11     examination by Counsel for the Defendants, having been

12     sworn by Martin J. Giordano, Registered Merit Reporter

13     ,and a Notary Public in and for the State of Maryland,

14     taken at The Baltimore County Office of Law, 400

15     Washington Avenue, 2nd Floor, Towson, Maryland, at 2:17

16     p.m., on Monday, January 13, 2003

17  -------------------------------------------

18

19

20  Reported by:

21  Martin J. Giordano, RMR

Reginald Lee                                              Deponent: REGINALD LEWIS LEE
v. Officer Dante Hemingway, et al.                        January 13, 2003

Page 58

1  Q. Well, the report wasn't made?
2  A. He talked to the officers.
3  Q. He was standing right where when?
4  A. He was standing there with the other two
5  officers.
6  Q. At the time of your arrest?
7  A. Yes.
8  Q. Okay. My point is: He didn't know what was
9  put in that report, did he?
10 A. I'm alleging that he did, or he should have
11 known.
12 Q. He should have known what was in the report?
13 A. He either knew, or should have known.
14 Q. Of what was in the report?
15 A. Right.
16 Q. Even though he didn't complete it?
17 A. He knew or should have known. He
18 participated in the arrest. He knew or should have
19 known what I was being arrested for.
20 Q. Tell me what facts you have to support your
21 contention that he knew what was in either the

Page 59

1  statement of probable cause, or in the police report.
2  A. Because they were talking together.
3  Q. Okay.
4  A. And I'm assuming they were talking about
5  arresting me and the reasons they were arresting me.

Page 60

1  interrogatories?
2  A. I'm pretty sure I did. Yes, I did.
3  Q. Okay. And those were mailed to
4  it give a date there of when they were mailed to you?
5  A. 10th of December?
6  Q. Right. Okay. Are you planning on answering
7  those interrogatories?
8  A. Next week.
9  Q. Okay. Now, I -- since you haven't answered
10 these, I'm going to let you know for the record that,
11 if, in your answers, any additional information comes
12 out that I feel like I need to question you about, that
13 I'll continue this deposition, and then call you back
14 to question you about those matters, okay?
15 A. With the understanding that next time we'll
16 have to do it at a location that's more convenient for
17 me, because this is way out of the way for me. How
18 about like downtown United States District Court,
19 because it took me like an hour and a half to get here,
20 and I was still late, which means I should have left
21 two hours early. That's too much of an inconvenience.

Page 61

1  Q. Well, I'm only saying that these answers
2  should have been supplied, and I
3  a lawyer and so forth and so on, but the
4  that you answer these under oath. I don't
5  time for your deposition, so that, if I get

```
 6     Q. All right. Now, we'll return to this             6    answers, and there is information in the
       answers that
 7   subject, but, for right now, you said that you don't  7    is different from what I've heard here
       today, or
 8   have any of the documents listed in Number 2 other than 8        something new, then I'm going
       to reserve the right to,
 9   what you said about a couple of pay stubs where you  9    you know, depose you about that.
10   missed time from work; is that correct?             10       A. I don't have no problem with that.
11       A. Right.                                       11       Q. Okay.
12       Q. Let me show you another document that I'll   12       A. See, I don't have anything to hide.
       The
         k the reporter to mark, both as 2 and 3.                 o lice do.
             (Whereupon, Lee Deposition Exhibit Nos. 2 and 14        . Let me ask you if you recognize Exhibit
15   3, Interrogatories, and Request for Production of   15    Number 3?
16   Documents, was marked for identification.)          16       A. Request for Production of
       Documents. Yeah.
17         BY MR. NOLAN:                          119    17    It look familiar.
18       Q. Let me show you Exhibit Number 2, Mr. Lee.   18       Q. And were you sent a copy of
       those?
19   Do you recognize that?                                      A. I'm pretty sure I was, yes.
20       A. Interrogatories. Yes, I do.                  20       Q. That would be the Request for
       Production of
21       Q. And did you receive a copy of those          21    Documents.
```

16 (Pages 58 to 61)

Reginald Lee

v. Officer Dante Hemingway, et al.

Page 6

1    A. Right.

2    Q.    Are you planning on responding to that?
3    A. Yes, I am.
4    Q.    When are you going to respond to that?
5    A.    Next week.
6    Q.    Okay. Have you ever used any aliases?
7    A. Nope.
8    Q.    What's your marital status?
9    A. Single.
10   Q. Now, you mentioned something about you've
11   been looking for witnesses. What witnesses have you
12   been looking for?
13   A. One of my witnesses had moved away.
14   Q.    Who is that?
15   A.    A woman that got into a verbal exchange with
16   the white detective, Giganti. She came out in her
17   yard. He actually thought he had the authority to tell
18   her to go back in her house, and she explained to him,
19   "I'm on my property in my yard. You cannot make me go
20   back in my house."
21   Q. Okay. And what was her name again?

Page 63
1    A. Her first name was Taneika. I don't remember
2    her last name.
3    Q. Taneika?

4    A. Right.

5    Q.    And what address does she live at or did she
6    live at?
7    A. She lived at 4115 Fairview.

8    Q. And are you saying she was a witness to what
9    happened in this -
10   A. Oh, absolutely.

11   Q.    Okay. And had you discussed the matter with
12   her after?
13   A. I haven't seen her, no.

14   Q. So you did not see her from the day of the
15   incident?
16   A. I've seen her, but I haven't had a chance to
17   talk to her. They have moved since then, shortly after
18   that.

19    Q. Who is "they"? You say "they." Who are 20 "they"?
21    A. Her, her two children, and her husband.

Deponent: REGINALD LEWIS LEE
January 13, 2003
Page 64

1   Q. What was her husband's name?
2   A. Herb.
3   Q. Excuse me?
4   A. Herb.
5   Q. Herb? What was his last name?
6   A. I don't know.
7     Q. And what efforts did you undertake to try to
8   locate her?
9   A. Well, I went by her girlfriend's house,
10  Donatte.
11  Q. Donatte?
12  A. Donatte.
13  Q. Can you spell that for me?
14  A. I'm not sure. D-O-N-A-T-T-E.
15  Q. Where does she live?
16    A. On North Avenue between Poplar Road and
17  Dukeland.
18    Q. Okay. So you've talked to the girlfriend,
19  Donatte?
20  A. Uh-huh.
21  Q. And what did she tell you?

Page 65

1    A. She told me she gave her my pager number, but
2   she don't know why she hasn't contacted me.
3     Q. Does Donatte know where she's living?
4    A. I'm pretty sure she does. She's the one that
5gave me her pager number without her permission.
6     Q. Okay. All right. And the information that
7   Taneika possesses or that she has knowledge of is she
8   saw what took place; is that what you're saying?
9    A. She heard and saw most of it.
10   Q. But you have not discussed with her at any
11  time after the incident what exactly it is that she
12  knows about the incident?
13   A. No.
14        And what other witnesses have tried to
    , Q. you
15  locate? Well, let me ask you this question first: Can
16  you tell me the names of all the witnesses who saw the
17  incident?
18    A. No. I can't tell you all of them. I know
19  Carlton and his wife.
20    Q. Carlton? Is that a first name, or his last
21  name?

Baltimore County
Office of Law
400 Washington Avenue Towson, Maryland 21204 410-887-4420

Fax: 410-296-0931

January 21, 2003

Mr. Reginald Lewis Lee
4121 Fairview Avenue
Baltimore, MD 21216

      Re:    Reginald Lee v. Officer Dante Hemingway, et al. U.S. District Court Civil Action
             No. S-02-2843

Dear Mr. Lee:

    As we discussed at your deposition on January 13, 2003, your Answers to Interrogatories and your Response to my Request for Production of Documents are now overdue. You advised me that you would prepare and send your responses to me. If I have not received your Answers to Interrogatories and your Response to the Request for Production of Documents by Friday, February 14, 2003, 1 will file a Motion for Sanctions with the Court requesting that your lawsuit be dismissed.

                                      Very truly yours,
                                      James J. Nolan. Jr.
                                      Assistant County Attorney

JJN,Jr./ch

cc:    Charles G. Byrd, Jr., Esquire Detective Nathan Stevenson

Come visit the County's Website at www.co.ba.md.us
Printed with Soybean Ink on Recycled Paper

PHONE MESSSAGE

FOR: EJG

DATE: 2-27-03              TIME: 4:21

Mr. Reginald Lee


Phone: Pager 410-3839-7866


Ex 7866


Re:     Response to Interrog Lee v Off Hemingway